## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**UNITED STATES OF AMERICA,**
*ex rel*. **ABC,**

**and**                                              **Case No.:**

**STATE OF MICHIGAN,**
*ex rel*. **ABC,**

      **Plaintiffs,**

**V.**

**DEF,**                                              <u>**Jury Trial Demanded**</u>
                                                     <u>**Filed Under Seal**</u>
                                                     31 U.S.C. § 3730(b)(2)

      **Defendants.**

---

## COMPLAINT
**Claims Pursuant to the False Claims Act, 31 USC § 3729, et seq.**
**And Michigan Medicaid False Claims Act, M.C.L.A. 400.601, et. seq.**

**[FILED UNDER SEAL]**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**UNITED STATES OF AMERICA,**
*ex rel*. **FADI JAAFAR,**

**and**                                                            **Case No.:**

**STATE OF MICHIGAN,**
*ex rel*. **FADI JAAFAR,**

      **Plaintiffs,**

**V.**

**ALI EL-KHALIL, DPM,**                           <u>**Jury Trial Demanded**</u>
                                                                 <u>**Filed Under Seal**</u>
                                                                 31 U.S.C. § 3730(b)(2)

      **Defendant.**

---

### COMPLAINT
### Claims Pursuant to the False Claims Act, 31 USC § 3729, et seq.
### and Michigan Medicaid False Claims Act, M.C.L.A. 400.601, et. seq.

---

The United States of America and the State of Michigan, by and through *qui tam* originating relator Dr. Fadi Jaafar ("Relator" or "Jaafar"), hereby brings this action pursuant to the False Claims Act ("FCA"), as amended, 31 U.S.C. § 3729 et seq. and the Michigan Medicaid False Claims Act ("MMFCA"), M.C.L.A. § 400.601, *et. seq.*, by and through his attorneys, Brian H. Mahany and the Law Firm of Mahany Law, and hereby declares the following to recover all damages, penalties, and other remedies available as established by the FCA and the MMFCA which were caused by Defendant's repeated and deliberate submissions of false, fraudulent and intentionally deceptive records, claims, statements and representations, used and caused to be made, used and relied upon by the United States Government and the State of Michigan under and through their Medicaid, Medicare, and other government funded health care programs.

As will be set forth with greater specificity below, Defendant Dr. Ali El-Khalil ("El-Khalil") knowingly submitted false claims to the federal government and the State of Michigan through its Medicaid and Medicare programs. Many of the claims for payment were fabricated or were falsified in order to obtain payments that the Defendant was not entitled to receive.

## THE PARTIES

1. Plaintiffs are the United States of America and the State of Michigan.

2. Plaintiff-Relator Jaafar is a resident of Michigan and was previously employed as a physician resident by Defendant El-Khalil. He is a physician who worked continuously for El-Khalil from approximately 2011 through 2015. Because of his employment, Jaafar witnessed the fraud alleged in this Complaint and is the original source of this information.

3. El-Khalil is a Michigan physician. His NPI is 1811151923. He is a podiatrist. His billing address is 5830 Golfview Drive, Dearborn Heights, Michigan 48127. His business practice location is 22146 Ford Road, Suite 3, Dearborn Heights, Michigan 48127.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. Plaintiff-Relator establishes subject matter jurisdiction under 31 U.S.C. § 3730(b).

5. This Court has personal jurisdiction over the Defendant and is a proper venue pursuant to 28 U.S.C. § 1391 (b) and 31 U.S.C. § 3732(a). Moreover, Defendant El-Khalil

transacts business is in this District and has committed the fraudulent acts described below in this District.

## **FEDERAL AND STATE FALSE CLAIMS ACT**

6. Pursuant to 31 U.S.C.A. § 3729, "any person who--(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . . is liable to the United States Government." 31 U.S.C.A. § 3729.

7. Private citizens, such as Relator, can bring actions on the government's behalf. "(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government." 31 U.S.C.A. § 3730(b)(1).

8. Under 31 U.S.C.A. § 3730 (e), there has been no statutory relevant public disclosure of the allegation or transactions in this Complaint with respect to which Plaintiff-Relator Jaafar is not an "original source," and all material information relevant to this Complaint was provided to the United States Government prior to filing her Complaint pursuant to 31 U.S.C.A. § 3730(e)(4)(B).

9. Michigan has enacted its own false claims act, which is known as the Michigan Medicaid False Claims Act ("MMFCA"). M.C.L.A. § 400.601, *et. seq.* The MMFCA states that a "person shall not knowingly make or cause to be made a false statement or false representation of a material fact in an application for benefits."

10. The MMFCA imposes liability upon a person who "receives a benefit that the person is not entitled to receive by reason of fraud or making a fraudulent statement or knowingly concealing a material fact, or who engages in any conduct prohibited by this

statute, shall forfeit and pay to the state the full amount received, and for each claim a civil penalty of not less than $5,000.00 or more than $10,000.00 plus triple the amount of damages suffered by the state as a result of the conduct by the person." MCLA § 400.612.

11. "Sec. 6. (1) A person shall not enter into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another to obtain the payment or allowance of a false claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, being sections 400.1 to 400.121 of the Michigan Compiled Laws." Mich. Comp. Laws Ann. § 400.606.

12. "Sec. 7. (1) A person shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, upon or against the state, knowing the claim to be false. . . (3) A person shall not knowingly make, use, or cause to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state pertaining to a claim presented under the social welfare act." MLCA § 400.607.

13. Like the federal False Claims Act, individual citizens can bring a claim on behalf of the State of Michigan for violations of the Michigan Medicaid False Claims Act. MCLA § 400.610a.

14. As will be described below, El-Khalil submitted false claims for payment to both the Medicare and the Medicaid programs, other government funded healthcare programs, and private insurance companies.

15. The State of Michigan and federal government paid claims and reimbursements to the Defendant that it would not have paid but for the false representations and claims.

## MEDICAID AND MEDICARE

16. The Medicare program was enacted in 1965 and the Secretary of Health and Human Services regulates the administration of the program through the Centers for Medicare and Medicaid Services ("CMS"). See 42 C.F.R. 422.503(a).

17. Federal law makes it a crime to submit false billings to the government for payment and requires that all submissions for payment be accurate. 18 U.S.C.A. § 1347.

18. Medicare is comprised of four parts: Parts A, B, C, and D.

19. Medicare and Medicaid are both considered "Federal health care programs." 42 U.S.C.A. § 1320a-7b.

20. The Medicaid program was enacted in 1965 and is jointly administered and financed by the federal and state governments. The State of Michigan's Medicaid program is operated by the Michigan Department of Health and Human Services ("MDHHS"). MDHHS has implemented an extensive Provider Manual that governs all Medicaid providers in Michigan, including pharmacies such as El-Khalil.

21. Pursuant to the Michigan Medicaid Provider Manual, Section 12.8,

> Providers certify by signature that a claim is true, accurate, and contains no false or erroneous information. The provider's signature or that of the provider's authorized representative may be handwritten, typed, or rubber-stamped on a paper claim.
>
> When a provider's warrant is endorsed or deposited, it is certification that the services billed were actually provided. It further certifies that the claims (paper or electronic) paid by the warrant accurately document that the health care services provided were within the limitation of Medicaid (or compliance with a contract). The warrant's certification applies to original claims as well as resubmitted claims and claim adjustments.

Michigan Medicaid Provider Manual, *General Information for Providers*, Section 12.8, Claim Certification, available at http://www.mdch.state.mi.us/dchmedicaid/manuals/MedicaidProviderManual.pdf

22. Medicare and Medicaid only reimburse claims for services that are reasonable and medically necessary. A provider, such as El-Khalil, certifies that all its claims are truthful and accurate and were medically necessary. As described below, El-Khalil fraudulently billed Medicare and Medicaid for services that were not provided and that which were not medically necessary. Because of these claims, El-Khalil has been reimbursed money he otherwise would not have received.

**Medicare Coverage of Foot Care and Nursing Facility Care**

23. Although some foot care is covered by Medicare, routine foot care is not.

> Services that normally are considered routine and not covered by Medicare include the following:
> • The cutting or removal of corns and calluses;
> • The trimming, cutting, clipping, or debriding of nails; and
> • Other hygienic and preventive maintenance care, such as cleaning and soaking the feet, the use of skin creams to maintain skin tone of either ambulatory or bedfast patients, and any other service performed in the absence of localized illness, injury, or symptoms involving the foot.

CMS, *Medicare Benefit Policy Manual,* Chapter 15, Section 290: Foot Care, available at https://www.cms.gov/Regulations-and-Guidance/Guidance/Manuals/downloads/bp102c15.pdf.

24. There are exceptions to the routine foot care exclusion. For examples, if routine care is integral to otherwise covered services, the service is covered. Additionally, the treatment of warts, systematic conditions, and mycotic nails is also covered.

25. In a nursing home setting, a physician can also report CPT Codes 99305 and 99307. Code 99305 is for the initial care service in the facility and Code 99307 is for subsequent nursing facility care. To report and bill Code 99307, two of the following

three components must have been met: 1) Problem focused interval history; 2) problem

focused examination; and 3) straightforward medical decision making. To report and

bill Code 99305, all three of the components must be met.

## FACTUAL BACKGROUND

26. Relator began working with El-Khalil when he was a medical student and later, when

he was a resident. The working relationship began in 2011.

27. As part of his job duties, Relator would visit nursing homes with El-Khalil to provide

foot and ankle related medical services to the facilities' residents.

28. In addition to Relator, other people went to visit nursing homes with El-Khalil,

including a male nurse who worked at Imperial Nursing Home. Another individual who

went on these visits is Doctor Yousif Aoun.

29. Relator and others, including the nurse and Dr. Aoun referenced above, visited at least

eight different nursing homes with El-Khalil in the Detroit and Dearborn areas. Some

of the nursing homes are: Father Murray, Regency, Westland Commons, Imperial

Nursing Home in Dearborn, Belle Fountain, and the Four Seasons Nursing Home.

30. While visiting the nursing homes, Relator noticed that El-Khalil was visiting an

extraordinary number of patients while spending very little, if any, time with the

patients he saw.

31. Relator witnessed that oftentimes El-Khalil would not physically visit with the patients

himself. Rather, his staff members, including Ar. Aoun and the nurse from Imperial

Nursing Home, would conduct the patient visits. However, Relator later learned that

El-Khalil submitted claims to Medicare and Medicaid as if he was the rendering

provider.

32. Relator also witnessed El-Khalil providing treatment to patients on an extremely fast basis. Frequently, Relator witnessed El-Khalil visit with a patient for only one or two minutes and El-Khalil would routinely not even physically touch the patient.

33. Because El-Khalil would only visit with the patient for but a few seconds, if at all, he was able to visit approximately 60 patients per day at different facilities.

34. When Relator asked El-Khalil about the short nature or non-existent visits, El-Khalil told Relator that he only billed for CPT codes involving nails and that therefore he met the requirements to bill the service.

35. Relator rarely saw El-Khalil meet the required components in order to bill Codes 99305 and 99307.

36. Relator reviewed El-Khalil's patient charts and noticed that all charts included the same notes for different patients. Thus, there was little, if any, personalized patient treatment.

37. Relator witnessed El-Khalil attempting to conceal the similar patient charts. El-Khalil would edit one or two lines to make it appear as though the charts were different. Frequently, he would copy and paste the same text and move the sentences around to make it appear the charts were individual to the patient when in reality, they were not.

38. After Relator stopped working for El-Khalil, Relator spoke with El-Khalil's billing company about what he witnessed.

39. El-Khalil's billing company told Relator that for all of El-Khalil's patients, he would submit CPT codes indicating 99305/99307 as well as callous treatment when in reality, the only thing often done was nail debridement. This meant that El-Khalil was reporting services he did not provide.

40. Relator believes that El-Khalil submitted claims to Medicare with codes 11056, 99305, and 99307, yet he rarely provided the services and rarely met any of the required components.

41. The services that El-Khalil submitted claims for were not medically necessary, were not provided, or were provided by people other than El-Khalil, even though the claims indicated he was the rendering provider. Therefore, the claims are fraudulent.

42. Relator is aware that El-Khalil would bill and report codes for office visits when routine foot care or a nail trimming/debridement is the service that was performed. This is fraud. "It is inappropriate and incorrect to report an E&M code when routine foot care or a nail trimming/debridement service is the service actually performed." CMS, *Routine Foot Care and Debridement of Nails*, January 1, 2010, available at https://downloads.cms.gov/medicare-coverage-database/lcd_attachments/30322_13/121109_00078_l30322_ft001_cbg.pdf

43. El-Khalil submitted claims for many patients as if the patient had mycotic nails. Mycotic nail services are covered and reimbursable by Medicare. However, not every patient had mycotic nails even though El-Khalil would state that they did in order to qualify them for Medicare coverage.

44. El-Khalil would also rotate diagnoses with every patient to justify a visit. This allowed El-Khalil's patient records to appear complete. El-Khalil made sure his notes always matched the billing so if he ever was audited, he would pass. For example, El-Khalil would see a patient for one minute and only clip the patient's nails. He would then move on to the next patient. However, his medical records would state that he checked the patient's pulse and did a physical exam and neurological check, which he did not

perform. He would then bill the 15-minute E&M code for these services. El-Khalil also frequently wrote in his patient records that he taped or strapped a hammertoe or put spacers in between toes to alleviate pressure so that an ulcer does not form, when in reality, these services were not provided.

45. Relator also saw patient records where El-Khalil would indicate that a patient complained of an ingrown nail and pain. In response to these alleged complaints, El-Khalil wrote that he did a slant back procedure to alleviate pain and pressure along with trimming nails. These notes make it appear that El-Khalil treated a coverable condition and justify his visit. However, these notes and patient complaints are completely fabricated. El-Khalil wrote the medical records to make it match the fraudulent bills he submitted.

46. Lastly, the patient's history is taken directly from the facility's background fact sheet. This makes it appear as though El-Khalil performed a thorough medical history review and physical with the patient when he did not do so.

47. By way of example, patient C.K. was treated by El-Khalil. El-Khalil submitted claims for three separate codes, 11712 (nails), 11056 (callous), and 99305 (new patient in nursing home). However, Relator is aware that no physical was provided and the requirements for a new patient visit were not met. Thus, these claims submissions are fraudulent.

**El-Khalil Failed to Sterilize Equipment**

48. In addition to failing to properly provide services to patients, El-Khalil does not properly clean or sterilize his equipment, which greatly compromises patient care.

49. Relator witnessed El-Khalil use the same nail nippers without cleaning and/or sanitizing the equipment after each usage.

**FIRST CLAIM FOR RELIEF**

**Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(A) and (B)**

50. Jaafar incorporates by reference each of the preceding paragraphs of this Complaint.

51. This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729 et seq., as amended.

52. By virtue of the acts described above, the Defendant knowingly presented, or caused to be presented, a false or fraudulent claim for payment or approval, which resulted in countless millions of dollars of payments of false claims by the United States Government and State of Michigan to the Defendant. All such false claims and acts are in violation of the FCA in general and specifically in violation of 31 U.S.C. § 3729(a)(1)(A).

53. By virtue of the acts described above, the Defendant also knowingly made, used or caused to be made or used, false records and statements material to a false or fraudulent claim which resulted in millions of dollars of payments of false claims by the United States Government and the State of Michigan to the Defendants. All such false claims and acts are in violation of the FCA in general and specifically in violation of 31 U.S.C. § 3729(a)(1)(B).

54. The acts described above induced the United States Government or the State of Michigan to pay or approve such false or fraudulent claims.

55. Every such payment by the United States to the Defendant was a product of a false claim and materially false statements made by Defendant.

56. In reliance on these false representations and claims, the United States Government and the State of Michigan, by and through its intermediaries, agents, and agencies, paid countless millions of dollars for claims submitted by Defendant that it otherwise would not have paid had the government been aware of Defendant's knowing violations of the FCA and MMFCA and the various rules and regulations of the Medicare, Medicaid, and other government funded medical programs.

57. Because of Defendant's acts, the United States and the State of Michigan have been damaged and continue to be damaged in substantial amounts to be determined at trial.

58. Pursuant to the FCA, the Defendant is liable to the United States for treble damages and a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein submitted on or before November 2, 2015 and a civil penalty of not less than $10,781 and not more than $21,563 for each false or fraudulent claim submitted after November 2, 2015.

## SECOND CLAIM FOR RELIEF

### Violations of the False Claims Act - 31 U.S.C. § 3729(a)(1)(C)

59. Jaafar incorporates by reference each of the preceding paragraphs of this Complaint.

60. This is a claim for treble damages and penalties under the FCA, 31 U.S.C. § 3729, et seq., as amended.

61. By virtue of the acts described above, the Defendant conspired to knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval, which resulted in payments of false claims by the United States Government and State of Michigan to the Defendant. Such conspiracy is a violation of 31 U.S.C. § 3729(a)(1)(C).

62. By virtue of the acts described above, the Defendant also conspired to knowingly make, use or cause to be made or used, false records and statements material to a false or fraudulent claim which resulted in payments of false claims by the United States Government and the State of Michigan to the Defendant. Such conspiracy is a violation of 31 U.S.C. § 3729(a)(1)(C).

63. Because of Defendant's acts, the United States and the State of Michigan have been damaged and continue to be damaged in substantial amounts to be determined at trial.

64. Pursuant to the FCA, the Defendant is liable to the United States for treble damages and a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein submitted on or before November 2, 2015 and a civil penalty of not less than $10,781 and not more than $21,563 for each false or fraudulent claim submitted after November 2, 2015.

## THIRD CLAIM FOR RELIEF

**Violations of the Michigan Medicaid False Claims Act – MCLA § 400.601, et seq.**

65. Jaafar incorporates by reference each of the preceding paragraphs of this Complaint.

66. This is a claim for treble damages and penalties under the MCLA § 400.601, et seq.

67. By virtue of the acts described above, the Defendant knowingly presented, or caused to be presented, to an employee or officer of the State of Michigan or its agencies under the social welfare act, a false or fraudulent claim for payment or approval, which resulted in countless millions of dollars of payments of false claims by the State of Michigan and the United States Government to the Defendant. All such false claims and acts are in violation of the MMFCA in general and specifically in violation of MCLA §§ 400.606; 400.607.

14

68. By virtue of the acts described above, the Defendant also knowingly made, used or caused to be made or used, false records and statements material to a false or fraudulent claim which resulted in millions of dollars of payments of false claims by the State of Michigan and the United States Government to the Defendant. All such false claims and acts are in violation of the MMFCA in general and specifically in violation of MCLA §§ 400.606; 400.607; 400.612.

69. The acts described above induced the State of Michigan and the United States Government to pay or approve such false or fraudulent claims.

70. Every such payment by the State of Michigan and the United States Government to the Defendant was a product of a false claim and materially false statements made by Defendant.

71. In reliance on these false representations and claims, the State of Michigan and the United States Government, by and through its intermediaries, agents, and agencies, paid countless millions of dollars for claims submitted by Defendant that it otherwise would not have paid had the government been aware of Defendant's knowing violations of the MMFCA and the various rules and regulations of the Medicare, Medicaid, and other government funded medical programs.

72. By reason of Defendant's acts, the State of Michigan and the United States Government has been damaged and continues to be damaged in substantial amounts to be determined at trial.

73. Pursuant to the MMFCA, the Defendant is liable to the State of Michigan for treble damages and a civil penalty of not less than $5,000 and not more than $10,000 for each of the false or fraudulent claims herein.

## <u>FOURTH CLAIM FOR RELIEF</u>

### Violations of The Michigan Social Welfare Act - MCLA 400.111b

74. Jaafar incorporates by reference each of the preceding paragraphs of this Complaint.

75. By virtue of the acts described above, the Defendant received monies that he was not entitled to receive.

76. As a condition of participation in the Michigan Medicaid program, the Defendant was required to "promptly shall notify the director of a payment received by the provider to which the provider is not entitled or that exceeds the amount to which the provider is entitled. If the provider makes or should have made notification under this subsection or receives notification of overpayment under section 111a(17), the provider shall repay, return, restore, or reimburse, either directly or through adjustment of payments, the overpayment in the manner required by the director. Failure to repay, return, restore, or reimburse the overpayment or a consistent pattern of failure to notify the director shall constitute a conversion of the money by the provider." MCLA § 400.111b.(16).

77. As a condition of payment for services rendered, a "provider must certify that a claim for payment is true, accurate, prepared with knowledge and consent of the provider, and does not contain untrue, misleading, or deceptive information. A provider is responsible for the supervision of an agent, officer, or employee who prepares or submits the claims. A provider's certification is prima facie evidence that the provider knows that the claim is true, accurate, prepared with his or her knowledge and consent, does not contain misleading or deceptive information, and is filed in compliance with applicable policies, procedures and instructions." MCLA § 400.111b.(17).

78. By virtue of Defendant's retention of falsely obtained monies and false certifications for payment, Defendant did not meet the requirements to participate in the Michigan Medicaid program.

79. These actions and failures would have prohibited Defendant from receiving any Medicaid payments and would have prohibited Defendant from being able to participate in the Medicaid program.

80. Defendant should be required to return all Medicaid payments it received after it wrongfully retained monies that were paid to it, in violation of MCLA § 400.111b.(16) and 400.111e.

### FIFTH CLAIM FOR RELIEF

**Fraud**

81. Relator realleges and incorporates by reference the allegations made in this Complaint.

82. Through the acts described above, Defendant made misrepresentations and omissions of material fact concerning medical services he allegedly provided to patients.

83. Defendant made these misrepresentations and omissions of material fact with knowledge of their falsity and/or with reckless disregard for their truth.

84. Defendant made these misrepresentations and omissions of material fact intending that United States and the State of Michigan, directly or indirectly, would rely on their accuracy in beginning or continuing to do business with Defendant.

85. Both the United States and the State of Michigan justifiably relied on these misrepresentations and omissions of material fact to their detriment.

86. As a result of Defendant's wrongful conduct, the United States and the State of Michigan have suffered damages in an amount to be determined at trial.

87. In addition to compensatory damages, given Defendant's bad faith and/or malicious, willful, reckless, wanton, or fraudulent conduct, both the United States and the State of Michigan are entitled to recover punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, the United States of America and the State of Michigan, through Fadi Jaafar, request the Court for entry of judgment against Defendant and the following relief:

A. That Defendants cease and desist from further violations of the False Claims Act, 31 U.S.C. § 3729 et seq., the MMFCA, and the related Medicare, Medicaid and other federally and state funded medical programs;

B. That the Court enter judgment against the Defendants in an amount equal to three times the amount of damages suffered by the United States because of Defendant's actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each of the false or fraudulent claims herein submitted on or before November 2, 2015 and a civil penalty of not less than $10,781 and not more than $21,563 for each false or fraudulent claim submitted after November 2, 2015 or a civil penalty of not less than $5,000 and not more than $10,000 for each false claim or certification in violation of the MMFCA;

C. That Relator be awarded the maximum amount allowed pursuant to section 3730(d) of the False Claims Act and MCLA § 400.610a;

D. That Relator be awarded all costs of this action, including attorneys' fees, costs and expenses pursuant to 31 U.S.C. § 3730(d) and MCLA § 400.610c; and

E. That the United States, the State of Michigan, and Relator be granted such further relief as the court deems equitable, just and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, a jury trial is demanded.


Respectfully submitted on this 27th day of March, 2017.



By:

_____/s/ Brian H. Mahany

Brian H. Mahany
Mahany Law
8112 West Bluemound Road
Suite 101
Wauwatosa, Wisconsin 53213
Office: (414) 258-2375
Email: brian@mahanylaw.com
Attorney for Plaintiff-Relator